IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE REMBERT,<br><br>               Petitioner,<br><br>vs.<br><br>KATHLEEN DICKINSON,[1] Warden,<br>California Medical Facility,<br><br>               Respondent. | No. 2:08-cv-00904-JKS<br><br>MEMORANDUM DECISION |

Petitioner George Rembert, a state prisoner appearing *pro se*, filed a Petition for Habeas Corpus Relief Under 28 U.S.C. § 2254. Rembert is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the California Medical Facility. Respondent ("State") has answered. Rembert has not replied.

I. BACKGROUND/PRIOR PROCEEDINGS

In March 1976 Rembert was convicted on a guilty plea in the Los Angeles Superior Court of Robbery in the First Degree (Cal. Penal Code § 211) and Felony Murder (Cal. Penal Code § 187). The trial court sentenced Rembert to an indeterminate prison term of seven years to life. Rembert does not challenge his conviction or sentence in this proceeding.

In May 2006 Rembert made his twelfth appearance before the Board of Parole Hearings ("Board"). The Board found Rembert unsuitable for parole, concluding that: "Petitioner was

---

[1] Kathleen Dickinson, Warden, California Medical Facility, is substituted for D. K. Sisto, Warden, California State Prison, Solano. Fed. R. Civ. P. 25(d).

unsuitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety."[2]  Rembert timely filed a petition for habeas corpus relief in the Los Angeles Superior Court, which was denied in an unpublished, reasoned decision.  Rembert's subsequent petition for habeas relief was denied by the California Court of Appeals in a partially reasoned decision.  The California Supreme Court summarily denied Rembert's petition for review without opinion or citation to authority on March 12, 2008.  Rembert timely filed his Petition in this Court on April 6, 2008.

The facts underlying Rembert's conviction, as recited by the Los Angeles Superior Court, are:

> The record reflects that the Petitioner and his crime partner intended to steal televisions.  They went to the Horn residence on the pretense of seeking work clearing brush.  Mrs. Horn became suspicious of the gentleman and declined the offer.  Later, Mrs. McIntyre, a neighbor, came home from work to find her house ransacked and her husband murdered.  The offense involved deliberate violence.  The husband's arms and ankles were bound with wired [*sic*] coat hangers.  Several of his ribs were broken.  Although the husband was bound and severely beaten, the assailants nevertheless decided to strangle him to death by wrapping a belt around his neck.[3]

After briefing was completed in this case, the United States Court of Appeals for the Ninth Circuit, sitting en banc, decided *Hayward v. Marshall*.[4]  At Docket No. 11 this Court entered its Order directing the parties to file supplemental briefs addressing the *Hayward* decision, in particular that "[t]he prisoner's aggravated offense does not establish current dangerousness 'unless the record also establishes that something in the prisoner's pre- or post-

---

[2] Docket No. 6-1, p. 55.

[3] Docket No. 6-1, p. 55.

[4] 603 F.3d 546 (9th Cir. 2010) (en banc).

incarceration history, or his or her current demeanor and mental state supports the inference of dangerousness."[5]  The Court also directed the parties to consider two Ninth Circuit Decisions applying *Hayward*.[6]  Both parties have submitted supplemental briefing.

## II.  GROUNDS RAISED/DEFENSES

In his Petition Rembert raises as his ground for relief that he was denied due process of law because the decision of the Board was unsupported by sufficient evidence of current dangerousness and impermissibly relied on the underlying commitment offense.  The State does not assert any affirmative defense.[7]

## III.  DISCUSSION

Rembert argues that the Board's decision, which was based primarily on the commitment offense, prior criminal history, and unstable social history occurring more than 30 years prior, are insufficient to support a finding that he currently poses an unreasonable risk of danger to public safety if released on parole.  In denying Rembert's petition, the Los Angeles Superior Court held:

> The Court finds that there is some evidence to support the Board's finding that Petitioner's commitment offense was committed in an especially cruel manner in that the offense was carried out in a dispassionate and calculated manner, the victim was abused, defiled or mutilated during the offense, the offense was carried out in a manner that demonstrated an exceptionally callous disregard for human suffering, and the motive for the crime was trivial in relation to the offense.  Cal. Code Regs., tit. 15, § 2281(c)(1).  The record reflects that the Petitioner and his crime partner intended to steal televisions.  They went to the Horn residence on the pretense of seeking work clearing brush.  Mrs. Horn became suspicious of the gentleman and declined the offer.  Later, Mrs. McIntyre, a neighbor, came home from work to find her house ransacked and her husband

---

[5] *Hayward*, 603 F.3d at 562.

[6] *Pearson v. Muntz*, 606 F.3d 606 (9th Cir. 2010) (per curiam), and *Cooke v. Solis*, 606 F.3d 1206 (9th Cir. 2010).

[7] *See* Rules—Section 2254 Cases, Rule 5(b).

murdered. The offense involved deliberate violence. The husband's hands and ankles were bound with wired coat hangers. Several of his ribs were broken. Although the husband was bound and severely beaten, the assailants nevertheless decided to strangle him to death by wrapping a belt around his neck.

The Court finds that there is some evidence to support the Board's finding that Petitioner's previous record showed an escalating pattern of criminal conduct and violence. An inmate may be unsuitable for release on parole if the inmate has on "previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age." Cal. Code Regs., tit. 15, § 2281(c)(2). The record reflects that Petitioner's criminal conduct began at early age. As a juvenile, Petitioner committed several offenses including curfew violation, burglary and robbery. As an adult, Petitioner continued his criminal conduct. Petitioner was arrested for petty theft, gambling, burglary and robbery. A couple of weeks prior to the commitment offense, Petitioner participated in a residential robbery. The victims of the robbery were assaulted.

In its decision, the Board noted that Petitioner committed several disciplinary violations while incarcerated. An inmate may be unsuitable for release on parole if the inmate has "engaged in serious misconduct in prison or jail." Cal. Code Regs., tit. 15, § 2281(c)(6). The Board noted that Petitioner has not committed any serious disciplinary violations since 2001. However, the record reflects that Petitioner has received twenty-three or twenty-four 115s, which includes violations for fighting, drugs and drug trafficking. Petitioner also received twenty-six 128s since being incarcerated.

Thus, the Court finds that there is "some evidence" to support the Board's determination that Petitioner presents an unreasonable risk of danger to society and is therefore not suitable for release on parole.[8]

In denying the petition before it, the California Court of Appeal held:

Petitioner has failed to state sufficient facts or legal authority demonstrating entitlement to the relief requested. There is "some evidence" to support the findings of the Board of Parole Hearings. (See *In re Dannenberg* (2005) 34 Cal.4th 1061, 1071.)[9]

"When habeas courts review the 'some evidence' requirement in California parole cases, both the subsidiary findings and the ultimate finding of some evidence constitute factual

---

[8] Docket No. 6-1, pp. 55-56.

[9] Docket No. 6-2, p. 59.

4

findings."[10]  In the Order requesting supplemental briefing, this Court directed the State to "specifically identify those characteristics, other than the underlying commitment offense, that support a finding that release of the Petitioner to parole status poses a current threat to public safety, and point to the specific evidence in the record that supports that determination."[11]

In its response, the State argues that, because *Hayward* was wrongly decided and represents circuit law, not the law as established by the Supreme Court, this Court need not follow *Hayward* or the Ninth Circuit cases applying *Hayward*.  The State, asserting that the order requiring that the evidence supporting the finding that the release of Rembert to parole status poses a current threat to public safety be identified is an improper question, declined to provide the required information.[12]  This Court disagrees.  This Court, a district court is, as is a three-judge panel of the Ninth Circuit, bound by the published decisions of a panel of the Ninth Circuit until overruled or undermined by higher authority, e.g., an en banc decision of the Ninth Circuit, a Supreme Court decision, or subsequent legislation.[13]  This has not occurred.  This Court notes

---

[10] *Cooke*, 606 F.3d at 1216.

[11] Docket No. 11, p. 2.

[12] If this were a single instance, this Court would be inclined to ignore the State's refusal to address *Hayward*.  Unfortunately, this is not an isolated incident.  This Court has received several similar responses to its order in other parole cases that were held in abeyance pending the en banc decision in *Hayward*, e.g., *Walker v. Kramer*, Case No. 2:07-cv-00803-JKS, *Singer v. Sisto*, Case No. 2:08-cv-00048-JKS, *Dewey v. Sisto*, Case No. 2:08-cv- 00580-JKS, and *Feliz v. Sisto*, Case No. 2:08-cv-01508-JKS, of which this Court takes judicial notice.  Fed. R. Evid. 201.  Consequently, this Court must conclude that the position taken in this case represents the official position of the State of California, acting through its Attorney General.

[13] *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).  A complication exists because the *Hayward* court predicated a federally protected liberty interest on California state statutes, regulations, and California Supreme Court decisions.  Thus, a California Supreme Court decision subsequent to *Hayward*, *Pearson*, and *Cooke* rejecting their reasoning might be
(continued...)

that, if as the State contends, *Hayward* was incorrectly decided, the appropriate remedy is to file a petition for a *writ of certiorari* in the Supreme Court within 90 days of the date the petition for rehearing in *Hayward* was denied.[14] The 90-day period began to run June 2, 2010, when the Ninth Circuit denied Hayward's petition for a rehearing.[15] As the time for filing a petition for *certiorari* had not yet expired, if the State contemplated seeking *certiorari*, the State could have requested this Court to grant additional time to comply with the Briefing Order. Alternatively, the State could have preserved its arguments that *Hayward* was erroneously decided for further appellate review, and still complied with the express terms of the Briefing Order. What the State could not do is what it did do in this case—ignore the clearly articulated requirements of

---

[13](...continued)
highly relevant. No such case has been identified.

[14] Supreme Court Rule 13.

[15] *Hayward v. Marshall*, Ninth Circuit Case No. 06-55392, Docket No. 120, of which this Court takes judicial notice. Fed. R. Evid. 201.

*Hayward* and decline to obey this Court's specific order.[16]  In so doing, even if the Order of this Court was "improper," the State ignored it at the State's peril.[17]

This Court could treat the State's failure to point to the evidence in the record supporting the factors, other than the commitment offense, cited in the Board's finding that Rembert posed a present threat of danger to society as conceding that no such evidence exists.  In this case, however, in his Supplemental Brief, Rembert does not dispute that these factors have been established.[18]

This Court must decide the case on the law as it exists at the time it renders is decision and, if the law changes while the case is pending, this Court applies the new rule.[19]  Thus,

---

[16] Indeed, as a result of the failure of the State to comply with this Court's Briefing Order, the State appears to assume that this Court will mine the record to find sufficient evidence to support the decision of the California Supreme Court.  It is well-established that the burden of establishing a violation of a constitutional right sufficient to warrant habeas relief is placed on the petitioner.  *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").  That does not, however, mean that the petitioner has the burden of proving a "negative," i.e., that something does not exist.  The State should not expect a federal district court to mine the record to find evidence that Rembert is currently dangerous, which, if found, would support a determination that, as required by *Hayward*, the California judicial decision approving the Board's decision rejecting parole was not an unreasonable application of the California some evidence requirement, or was not based on an unreasonable determination of the facts in light of the evidence.

[17] *See Walker v. City of Birmingham*, 388 U.S. 307, 314 (1967) ("until its decision is reversed for error by orderly review, either by itself or by a higher court, [a court's] orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished.") (quoting *Howat v. State of Kansas*, 258 U.S. 181, 189-90 (1922)); *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) (same); *United States v. United Mine Workers of America*, 330 U.S. 358, 293 (1947) (same).

[18] Docket No. 12, p. 16.

[19] *See Thorpe v. Housing Authority of City of Durham*, 393 U.S. 268, 281-82 (1969); *Lambert v. Blodgett*, 393 F.3d 943, 973 n.21 (9th Cir. 2004).

although it establishes a new rule, the holding in *Hayward* is nevertheless controlling.  In this case, this Court "need only decide whether the California judicial decision approving the [Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or 'was based on an unreasonable determination of the facts in light of the evidence.'"[20]  By its reference to § 2254(d), the Ninth Circuit implicitly, if not explicitly, directed this Court to apply § 2254(d) to the decisions of the California Supreme Court using the same standards as are applied to the determination of the law as established by the United States Supreme Court.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."[21]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[22]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively

---

[20] *Hayward*, 603 F.3d at 563 (footnotes citing 28 U.S.C. § 2254(d) omitted).

[21] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[22] *Williams*, 529 U.S. at 412.

unreasonable, not just incorrect or erroneous.[23]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[24]  Consequently, it appears that, under the mandate of *Hayward*, this Court must canvas and apply California law as it existed at the time of the state-court decision to the facts in the record, as presented to the state court.

The mandate in *Hayward* is that this Court must review the decisions of state courts interpreting and applying state law—in effect serving as a super-appellate court over state court decisions.  This is in tension with the holdings of the Supreme Court.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[25]  "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[26]  This principle applied to federal habeas review of state convictions long before AEDPA.[27]  A federal

---

[23] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[24] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[25] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[26] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[27] *See Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law").

court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's interpretation of the law.[28]

At the time of the state-court decisions in this case, the California "some evidence" rule was embodied in *In re Rosenkrantz*[29] and *In re Dannenberg*.[30] Subsequently, the California Supreme Court, applying *Rosenkrantz* and *Dannenberg*, decided *In re Lawrence*[31] and *In re Shaputis*.[32]

In *Rosenkrantz*, the California Supreme Court held:

> [. . . .] "Due process of law requires that [the Board's] decision be supported by some evidence in the record. Only a modicum of evidence is required. Resolution of any conflicts in the evidence and the weight to be given the evidence are matters within the authority of the [Board]. [. . . .] [T]he precise manner in which the specified factors relevant to parole suitability are considered and balanced lies within the discretion of the [Board] . . . . It is irrelevant that a court might determine that evidence in the record tending to establish suitability for parole far outweighs evidence demonstrating unsuitability for parole. As long as the [Board's] decision reflects due consideration of the specified factors as applied to the individual prisoner in accordance with applicable legal standards, the court's review is limited to ascertaining whether there is some evidence in the record that supports the [Board's] decision."[33]

The California Supreme Court then held:

> The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole. (Citations omitted.) Although the parole authority is

---

[28] *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

[29] 59 P.3d 174 (Cal. 2002).

[30] 104 P.3d 783 (Cal 2005).

[31] 190 P.3d 535 (Cal. 2008).

[32] 190 P.3d 573 (Cal. 2008).

[33] *Rosenkrantz*, 59 P.3d at 218. Quoted with approval in *Shaputis*, 190 P.3d at 585.

court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's interpretation of the law.[28]

At the time of the state-court decisions in this case, the California "some evidence" rule was embodied in *In re Rosenkrantz*[29] and *In re Dannenberg*.[30] Subsequently, the California Supreme Court, applying *Rosenkrantz* and *Dannenberg*, decided *In re Lawrence*[31] and *In re Shaputis*.[32]

In *Rosenkrantz*, the California Supreme Court held:

> [. . . .] "Due process of law requires that [the Board's] decision be supported by some evidence in the record. Only a modicum of evidence is required. Resolution of any conflicts in the evidence and the weight to be given the evidence are matters within the authority of the [Board]. [. . . .] [T]he precise manner in which the specified factors relevant to parole suitability are considered and balanced lies within the discretion of the [Board] . . . . It is irrelevant that a court might determine that evidence in the record tending to establish suitability for parole far outweighs evidence demonstrating unsuitability for parole. As long as the [Board's] decision reflects due consideration of the specified factors as applied to the individual prisoner in accordance with applicable legal standards, the court's review is limited to ascertaining whether there is some evidence in the record that supports the [Board's] decision."[33]

The California Supreme Court then held:

> The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole. (Citations omitted.) Although the parole authority is

---

[28] *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

[29] 59 P.3d 174 (Cal. 2002).

[30] 104 P.3d 783 (Cal 2005).

[31] 190 P.3d 535 (Cal. 2008).

[32] 190 P.3d 573 (Cal. 2008).

[33] *Rosenkrantz*, 59 P.3d at 218. Quoted with approval in *Shaputis*, 190 P.3d at 585.

court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's interpretation of the law.[28]

At the time of the state-court decisions in this case, the California "some evidence" rule was embodied in *In re Rosenkrantz*[29] and *In re Dannenberg*.[30] Subsequently, the California Supreme Court, applying *Rosenkrantz* and *Dannenberg*, decided *In re Lawrence*[31] and *In re Shaputis*.[32]

In *Rosenkrantz*, the California Supreme Court held:

> [. . . .] "Due process of law requires that [the Board's] decision be supported by some evidence in the record. Only a modicum of evidence is required. Resolution of any conflicts in the evidence and the weight to be given the evidence are matters within the authority of the [Board]. [. . . .] [T]he precise manner in which the specified factors relevant to parole suitability are considered and balanced lies within the discretion of the [Board] . . . . It is irrelevant that a court might determine that evidence in the record tending to establish suitability for parole far outweighs evidence demonstrating unsuitability for parole. As long as the [Board's] decision reflects due consideration of the specified factors as applied to the individual prisoner in accordance with applicable legal standards, the court's review is limited to ascertaining whether there is some evidence in the record that supports the [Board's] decision."[33]

The California Supreme Court then held:

> The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole. (Citations omitted.) Although the parole authority is

---

[28] *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

[29] 59 P.3d 174 (Cal. 2002).

[30] 104 P.3d 783 (Cal 2005).

[31] 190 P.3d 535 (Cal. 2008).

[32] 190 P.3d 573 (Cal. 2008).

[33] *Rosenkrantz*, 59 P.3d at 218. Quoted with approval in *Shaputis*, 190 P.3d at 585.

prohibited from adopting a blanket rule that automatically excludes parole for individuals who have been convicted of a particular type of offense, the authority properly may weigh heavily the degree of violence used and the amount of viciousness shown by a defendant. [. . . .]

In some circumstances, a denial of parole based upon the nature of the offense alone might rise to the level of a due process violation—for example where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense. Denial of parole under these circumstances would be inconsistent with the statutory requirement that a parole date normally shall be set "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public . . . ." (Pen.Code, § 3041, subd. (a).) "The Board's authority to make an exception [to the requirement of setting a parole date] based on the gravity of a life term inmate's current or past offenses should not operate so as to swallow the rule that parole is 'normally' to be granted. Otherwise, the Board's case-by-case rulings would destroy the proportionality contemplated by Penal Code section 3041, subdivision (a), and also by the murder statutes, which provide distinct terms of life without possibility of parole, 25 years to life, and 15 years to life for various degrees and kinds of murder. (Pen. Code, § 190 et seq.) [¶] Therefore, a life term offense or any other offenses underlying an indeterminate sentence must be particularly egregious to justify the denial of a parole date." ( Citation omitted.)[34]

In *Dannenberg* the California Supreme explained:

[. . . .] So long as the Board's finding of unsuitability flows from pertinent criteria, and is supported by "some evidence" in the record before the Board [citing *Rosenkrantz*], the overriding statutory concern for public safety in the individual case trumps any expectancy the indeterminate life inmate may have in a term of comparative equality with those served by other similar offenders. Section 3041 does not require the Board to schedule such an inmate's release when it reasonably believes the gravity of the commitment offense indicates a continuing danger to the public, simply to ensure that the length of the inmate's confinement will not exceed that of others who committed similar crimes.[35]

---

[34] *Id.* at 222; *see Shaputis*, 190 P.3d at 584-85 ("The record supports the Governor's determination that the crime was especially aggravated *and*, importantly, that the aggravated nature of the offense indicates that the petitioner poses a current risk to public safety." (emphasis in the original)).

[35] *Dannenberg*, 104 P.3d at 795.

The California Supreme Court then held:

> Thus, there clearly was "some evidence" (citing *Rosenkrantz*) to support the Board's determination that Dannenberg's crime was "especially callous and cruel," showed "an exceptionally callous disregard for human suffering," and was disproportionate to the "trivial" provocation. Accordingly, under *Rosenkrantz,* the Board could use the murder committed by Dannenberg as a basis to find him unsuitable, for reasons of public safety, to receive a firm parole release date.[36]

The Board must, however, "point to factors beyond the minimum elements of the crime for which the inmate was committed" that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released.[37] The Board "may credit evidence suggesting the inmate committed a greater degree of the offense than his or her conviction evidences."[38] In *Lawrence*, however, the California Supreme Court rejected the argument "that the aggravated circumstances of a commitment offense inherently establish current dangerousness," holding:

> "[W]e conclude that although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of *current* dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety."[39]

This is the clarification upon which *Hayward*, *Pearson*, and *Cooke* rely, and it was the language in *Lawrence* to which this Court alluded to in its Order, which the State declined to address.

---

[36] *Id.* at 803.

[37] *Id.* at 786-87, 802-803; *see Rosenkrantz*, 59 P.3d at 222.

[38] *Dannenberg*, 104 P.3d at 803 n.16 (citing *Rosenkrantz*, 59 P.3d at 219).

[39] 190 P.3d at 554-55; *see Cooke*, 606 F.3d at 1214.

The State's contumacious conduct in declining to comply with this Court's Order notwithstanding, this Court must nonetheless determine whether the decisions of the California courts upholding the Board's denial of parole complied with California law as expressed in *Lawrence* and *Shaputis*. Because state-court judgments carry a presumption of finality and legality, Rembert has the burden of showing by a preponderance of the evidence that he merits habeas relief.[40] Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[41] This presumption applies to state trial courts and appellate courts alike.[42] Both the subsidiary findings on the applicable factors and the ultimate finding of some evidence of current dangerousness constitute factual findings.[43]

With respect to the underlying commitment offense, the applicable regulation provides:

(1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
    (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
    (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
    (C) The victim was abused, defiled or mutilated during or after the offense.
    (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

---

[40] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[41] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[42] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

[43] *Cooke*, 606 F.3d at 1216.

    (E) The motive for the crime is inexplicable or very trivial in relation to the offense.[44]

  The evidence clearly supports a finding that this case falls within the scope of (1)(A), (C), and (E), and possibly falls within the scope of (1)(D). Under California law, a court neither re-weighs the evidence nor substitutes it's discretion for that of the Board. Judicial review of a decision denying parole is "extremely deferential."[45] Thus, under *Rosenkrantz* and *Dannenberg*,[46] this Court could not say that the decision was contrary to, or involved an unreasonable application of California law at the time it was decided, or was based on an unreasonable determination of the facts in light of the evidence. On the other hand, because *Hayward*, *Pearson*, and *Cooke* require that *Lawrence* and *Shaputis* be applied, this Court must look to determine whether there was some factor in addition to the underlying commitment offense to support denial of parole. In this case, Rembert challenges solely the ultimate finding that the factors do not support the ultimate finding—that Rembert currently poses an unreasonable risk of harm to society if released on parole. Thus, accepting the factors recited by the Los Angeles Superior Court as being adequately supported by the evidence as conceded by Rembert, this Court's review is limited to determining whether those factors are sufficient to support the finding of current dangerousness.

  The factors, in addition to the underlying commitment offense cited by the Board and the California Court of Appeal included: (1) a pre-conviction escalating pattern of criminal conduct, including violence; and (2) serious disciplinary infractions, including violence, while

---

[44] Cal. Code & Regs., tit. 15, § 2281(c).

[45] *Rosenkrantz*, 59 P.3d at 210.

[46] The California Court of Appeal cited *Dannenberg*.

incarcerated. Both are appropriate factors to be considered under California law.[47] Distilled to its essence, Rembert's argument goes to the weight the Board gave those factors. While this Court agrees that, at least with respect to the pre-conviction criminal history, its probative value is attenuated by the 30-year lapse in time, that goes solely to the weight to be given the factor. Nothing in California law permits, let alone mandates, that this Court re-weigh the evidence or substitute its judgment for that of the Board. The governing regulation establishing the criteria for parole release specifically provides that, with respect to the circumstances tending to show unsuitability: "The following circumstances each tend to indicate unsuitability for release. These circumstances are set forth as general guidelines; *the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel.*"[48] This Court must defer to the judgment of the Board.[49]

The additional factors relied upon by the Board and the California courts were sufficient to satisfy the requirements of *Lawrence* and *Shaputis*, as interpreted by the Ninth Circuit in *Hayward*, *Cooke*, and *Pirtle*. Thus, this Court cannot say that the decisions of the Los Angeles Superior Court and the California Court of Appeal were contrary to, or involved an unreasonable application of the California some evidence rule, or was based on an unreasonable determination of the facts in light of the evidence presented to those courts. Consequently, Rembert is not entitled to relief.

---

[47] Cal. Code Regs., tit 15, § 2281(c)(2) ("Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age."), (6) ("Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.").

[48] Cal. Code Regs., tit. 15, § 2281(c) (emphasis added).

[49] *Rosenkrantz*, 59 P.3d at 210.

## V.  CONCLUSION AND ORDER

Rembert is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[50]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[51]

The Clerk of the Court is to enter final judgment accordingly.

Dated:  November 9, 2010.

                                                /s/ James K. Singleton, Jr.
                                                JAMES K. SINGLETON, JR.
                                                United States District Judge

---

[50] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).

[51] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.